[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiffs from an assessment of damages by the defendant for the taking of a portion of their property in the Town of Manchester, as shown on a map entitled: "TOWN OF MANCHESTER MAP SHOWING LAND ACQUIRED FROM SAMUEL FELTHAM ET AL BY THE STATE OF CONNECTICUT INTERSTATE ROUTE 291 (LIMITED ACCESS HIGHWAY) SCALE 1" = 40' APRIL 1990 ROBERT W. GUBALA TRANSPORTATION CHIEF ENGINEER — BUREAU OF HIGHWAYS." A certified copy of the taking map, Revision of March 4, 1991, was introduced into evidence as Exhibit 6. The property taken was also described in the complaint.
The parties stipulated that the date of taking was April 25, 1991, and that damages as assessed by the defendant in the amount of $143,700 were deposited by the defendant with the clerk of the superior court.
The Town of Manchester lies to the east of Hartford and is approximately midway between New York and Boston. It is on major highways and is served by bus lines, Conrail and motor common carriers. It contains a mix of business and residential development.
The subject property is in the northwest quadrant of the Town of Manchester near its borders with South Windsor and East Hartford. It lies on the southerly side of the Tolland Turnpike. The neighborhood is mainly industrially zoned land. The subject property is close to the 393 acre Buckland Industrial Park. To the east lies Buckland Commons Mall, a regional shopping center. There CT Page 9282 is some residential development to the west. The subject property is zoned for industrial use, although there is a single family dwelling with attached garage located in the east center portion of it. The dwelling existed before the land was zoned Industrial and is a legal nonconforming use. The property also has on it a greenhouse, sheds and a detached garage. These last mentioned structures are in poor condition and do not add to the value of the property. Before the take, the property had frontage of about 346 feet along Tolland Turnpike and there were two driveways into the property. It consisted of 5.04 acres, more or less and was generally rectangular in shape. It sloped upwards from Tolland Turnpike to the south and upwards from west to east. It has electric and telephone service and a private well and septic system. There was an easement in favor of the State of Connecticut at the northeast corner of the subject property before the take and there was no access from the rear property line to land of the State of Connecticut.
The taking consisted of a parcel containing 1.74 acres, more or less, taken by the defendant as necessary for the layout, alteration, extension, widening, change of grade and improvement of Interstate Route 291. The parcel is irregular in shape and takes the rear portion of the subject property. The southerly line of the take is along the former highway non-access line. The northerly line of the take is 493 feet, more or less, in length. The easterly line is 165 feet, more or less, in length, and the westerly line is 265 feet, more or less, in length. An elevated roadway will be constructed in the taking area which will cut off the view from the house to the west. A high volume of traffic is projected for the new Interstate Route 291 and for an improved and reconstructed Tolland Turnpike. The defendant also took an easement to excavate a ditch, place riprap and remove, use or retain excavated material within an area of 0.02 of an acre, more or less, in the northeasterly portion of the subject property. Counsel for the defendant reported that a change in design had eliminated the need for the ditch. Tolland Turnpike is to be relocated to the north and the defendant also acquired the right to construct a driveway from the subject property to the relocated Tolland Turnpike. The driveway will provide access to CT Page 9283 the Tolland Turnpike from the easterly side of the subject property and its location is restricted because of the proximity of a railroad grade crossing. The relocation of the Tolland Turnpike to the north of its previous location will eliminate the frontage of the subject property so that the only means of access will be over the driveway.
After the take, the property will consist of 3.3 acres, more or less, with access to the Tolland Turnpike over a driveway. The dwelling house will remain, as will the other outbuildings.
Eileen Feltham testified in her own behalf that she and her husband own the subject property. She spoke of the loss of the view of the meadow to the west occasioned by the new highway. She also spoke of the loss of frontage.
The plaintiffs called Peter R. Marsele, a qualified real estate appraiser, as an expert witness. He concluded that the highest and best use for the subject property both before and after the take was to continue its present use. He opined that a 0.75 of a acre dwelling site could be used for the permitted, nonconforming dwelling, and that the balance of the property could be used for industrial development. Marsele used the market comparison approach to value. He found three sales of land zoned for industrial use and three sales of single family dwellings, all of which he found comparable. After making necessary adjustments, he opined that before the take, the dwelling and improvements with 0.75 of an acre of land had a fair market value of $175,000. He opined that the 4.29 acres remaining before the take had a fair market value of $472,000. He opined that the total value before the take was $647,000. Marsele used the same comparables to arrive at a value after the take. He opined that the dwelling site would be reduced in value because of the loss of the view to the west and because of its proximity to the new highway. After making necessary adjustments, he opined that the dwelling and improvements with 0.75 of an acre of land had a fair market value of $140,000. He opined that the 2.55 acres remaining after the take had a fair market value of $242,000. He opined that the total CT Page 9284 fair market value after the take was $382,000. He thus estimated damages at $265,000.
The defendant called Gregory A. Soja, a project engineer, to explain the maps which had been introduced into evidence.
The defendant called John F. DeLucco, a qualified real estate appraiser, as an expert witness. DeLucco concluded that the highest and best use for the subject property before the take was for industrial development. He opined that before the take the subject property would have greater value for industrial development than it had as improved with the nonconforming dwelling and the outbuildings. In order to develop the subject property industrially after the take, because the relocation of Tolland Turnpike eliminated frontage and allowed access only over a driveway, DeLucco opined that a variance would be required. He concluded that the highest and best use for the subject property after the take was to continue the present use as a permitted, nonconforming dwelling with excess land. He used the market data approach to arrive at a value for the subject property before the take. He used three sales of industrial land which he found comparable. After making necessary adjustments, he opined that the subject property before the take had a fair market value of $378,000. DeLucco used three sales of ranch style houses in Manchester which he found to be comparable sales. After making necessary adjustments he opined that the subject property had a fair market value after the take of $235,000 reduced by $750 for the easement area, or $234,300 rounded. He thus estimated damages at $143,700.
Although the plaintiffs offered no evidence that they had any plans for development of their property, at any time, the property lies in an industrial zone and there is very little residential development in the neighborhood. It is my conclusion that industrial development of the entire property would have been its highest and best use before the taking, and that after the take the highest and best use for the subject property is for its continued use as a single family dwelling. The elimination of frontage along Tolland Turnpike has resulted in this change. CT Page 9285
The duty of a referee in an appeal from an award for the acquisition of property by eminent domain is to reach his own conclusion of value by weighing the opinions of the appraisers and the claims of the parties in the light of all the circumstances bearing on value and of his own knowledge of the elements affecting value.
After having seen the property, and having given due consideration to the testimony of all the witnesses and to all of the evidence, and relying upon my own knowledge of the elements establishing value I have concluded that the damages sustained by the plaintiffs were $188,000. Judgment may enter for the plaintiffs for the further sum of $44,300 in addition to the sum of $143,700 which was deposited by the defendant, with interest on the said further sum of $44,300 from the date of taking to the date of payment, together with costs and an allowance of $1,200 towards their appraisal fee.
George D. Stoughton, State Trial Referee